**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RAUL SOTO** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | **C.R. No. 05-43ML** |
| | : | |
| | : | **1:07-cv-476ML** |
| | : | |
| **UNITED STATES OF AMERICA** | : | |

**GOVERNMENT'S RESPONSE TO PETITIONER'S "MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER SECTION 2255"**

In his 28 U.S.C. § 2255 Petition, Raul Soto ("Soto") alleges that his counsel provided ineffective assistance of counsel in connection with his plea of guilty to being a felon-in-possession of a firearm by: (1) underestimating the potential sentence he might receive; and (2) counseling him to enter into a Plea Agreement which offered him no benefit whatsoever. As set forth below, both claims are meritless. Responsibility for Soto's lengthy sentence rests with Soto and with Soto alone; in large part it is the result of his perjurious testimony at the sentencing hearing.

**BACKGROUND**

On April 6, 2005, a federal grand jury returned an indictment against Soto charging him with possessing a Glock .40 caliber pistol after having been previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On May 17, 2005, Soto signed a plea agreement which warned that: (1) "the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed"; (2) he could receive up to the statutory maximum term of imprisonment; and (3) the maximum term of imprisonment was ten years. Plea Agreement, attached hereto as Exhibit A, ¶¶ 5, 11. In the Plea Agreement, Soto certified: "Defendant states that Defendant has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions." Exhibit A, ¶ 17. Defense counsel affirmed: "Counsel for Defendant states that Counsel has read this agreement, been given a copy of it for Counsel's file, explained it to Defendant, and states that to the best of Counsel's knowledge and belief, Defendant understands the agreement." Exhibit A, ¶ 16.

At the May 31, 2005 guilty plea hearing, this Court confirmed that Soto had read the plea agreement, discussed it with his attorney, had no questions about it, that he was aware that the Court would make a determination of what the guideline range was, and that the Court could impose a sentence up to the maximum penalty, which consisted of a term of imprisonment of ten years. Transcript of Plea Hearing, attached as Exhibit B, pp. 5-6, 8-11. The government then summarized the offense facts,

including the fact that: (1) Soto shot his gun multiple times during a dispute outside a nightclub; (2) one of the police officers on the scene actually saw Soto with the gun in his hand; (3) Soto nearly killed one of the officers, who was so close to the gun when it discharged that he lost hearing in one ear and had to be treated; (4) Soto also fired the gun from his car as he was fleeing; and (5) the police ultimately recovered the Glock pistol from under the driver's seat of Soto's car after Soto crashed the car and struggled to avoid arrest. Exhibit B, pp. 15-17. After the government's summary, however, Soto would only acknowledge the bare facts necessary to establish the elements of the § 922(g) offense. Exhibit B, pp. 17-19.

Based on a prosecution version which expanded on the above offense facts (PSR ¶ 11), the Probation Office applied a cross-reference from the felon-in-possession guideline (2K2.1) to the attempted murder guideline (2A2.1), yielding a base offense level of 33. PSR ¶ 18. It also recommended a two-level enhancement for reckless endangerment during flight. PSR ¶ 23. With a three-level reduction for acceptance of responsibility, Soto's total offense level was 32. PSR ¶ 26. The advisory guideline range was 121-151 months, but the statutory maximum

was ten years, making "the restricted range 120 months." PSR ¶ 56.

Soto objected to the PSR's offense level calculation, arguing that the aggravated assault guideline (2A2.2) was more appropriate than the attempted murder guideline and that the Probation Office also erred in recommending a reckless endangerment enhancement. PSR Addendum ¶¶ 1-2. The Probation Office adhered to both positions. Id.

At the September 16, 2005 sentencing hearing, this Court heard testimony from two police officers and from Soto. Transcript of Sentencing Hearing, attached as Exhibit C, pp. 4-62. In light of that testimony, the Court found that Soto had fired his gun several times into a crowd of 20-30 people that included police officers trying to break up a fight in which Soto was then engaged, that one of his shots narrowly missed the head of one of the officers, and that he also fired the gun from his car as he was fleeing the scene. Exhibit C, pp. 71-76, 82-84. The Court rejected as perjurious Soto's testimony that he merely fired his gun into the ground and did not fire it from the car. Exhibit C, pp. 74-75. The Court concluded that Soto acted with awareness that he might well kill someone, that he "didn't care who it was going to be," and that his conduct "was certainly willful, deliberate, malicious and premeditated."

Exhibit C, pp. 74-75. On that basis the Court agreed with the Probation Office that the attempted murder guideline and reckless endangerment enhancement applied, with the result that "the statutory maximum sentence [ten years or 120 months] is actually below the appropriate guideline range." Exhibit C, pp. 75, 82.

To create a record in the event of an appeal, the Court conducted an alternative guideline analysis based on the defense concessions that (1) the aggravated assault guideline applied and (2) a five-level enhancement was required because Soto discharged the gun. Exhibit C, pp. 62-63, 72, 75. The Court also found that further enhancements were warranted for: (1) the bodily injury to the officer who was nearly shot in the head and who lost some of his hearing as a result; (2) Soto's reckless endangerment during flight (his firing of the gun while fleeing); and (3) Soto's false testimony at sentencing; and, moreover, that Soto did not deserve any reduction for acceptance of responsibility. Exhibit C, pp. 72, 75-76. The Court noted that this alternative analysis would have yielded an advisory sentencing range of 63-78 months. Exhibit C, p. 76.

This Court continued its alternative analysis during the discretionary phase of the sentencing. After hearing from the parties on the appropriate post-Booker sentence and considering

the factors in 18 U.S.C. § 3553, the Court concluded that the statutory maximum was called for, and it stated that even if Soto had received the benefit of the alternative guideline analysis noted above, it still would have imposed that maximum penalty: "even if I were to take into account the guideline argued for on behalf of the Defendant, that is, the 2A2.2 (aggravated assault) guideline, using the discretion that I have pursuant to Booker, I would sentence this Defendant to as much time as I possibly could in order to protect the good citizens from this Defendant." Exhibit C, pp. 81-85.

Soto took an appeal to the First Circuit, which upheld the appeal waiver contained in the Plea Agreement and dismissed the appeal on April 11, 2007, mandate issued on May 3, 2007. Exhibit D.

## ARGUMENT

### I. DEFENDANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL WITH RESPECT TO THE PLEA AGREEMENT NEGOTIATED WITH THE GOVERNMENT.

In Strickland v. Washington, 466 U.S. 668, 687-688 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. Under that test, a defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that he

was prejudiced as a result of his attorney's deficient performance. Id.; Matthews v. Rakiey, 54 F.3d 908, 916 (1st Cir. 1995); Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994); United States v. Caggiano, 899 F.2d 99, 101 (1st Cir. 1990). It is the defendant's burden to establish both parts of the test, by a preponderance of the evidence. Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001).

With regard to the test's first part, "[c]ounsel's judgment is subject to highly deferential review," United States v. Gomes, 177 F.3d 76, 83 (1st Cir. 1999), and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. "'[T]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather the performance standard is that of reasonably effective assistance under the circumstances then obtaining.'" Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994)(quoting Lema v. United States, 987 F.2d 48, 50 (1st Cir. 1993)). The court "'must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" Lema, 987 F.3d at 51 (quoting Strickland, 466 U.S. at 689).

In the context of a guilty plea, prejudice, the second part of the Strickland test "'focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process.'" United States v. Colon-Torres, 382 F.3d 76, 86 (1st Cir. 2004) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). To satisfy this requirement, a petitioner must "show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. (quoting Hill, 474 U.S. at 59). Yet a defendant's "mere allegation that he would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002) (citation omitted). "Rather, we look to the factual circumstances surrounding the plea to determine whether [defendant] would have proceeded to trial." Id. "Specifically, while defendant is not required to prove a reasonable probability that, but for counsel's mistakes, he would have prevailed at trial, the assessment of whether he would have changed his plea depends in large part on a prediction of whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors." Id.

The government will address Soto's two ineffective assistance claims in turn.

**A. Counsel's Alleged Assurances Concerning The Sentence Soto Would Receive Do Not Constitute Ineffective Assistance Of Counsel**

Soto first claims that his attorney was ineffective because he allegedly assured Soto that he would receive no more than five years in prison, when, as things ultimately turned out, he received ten years. Essentially, the defendant claims that his attorney was a poor prognosticator of the sentence he was to receive.

As a threshold matter, Soto's claim that his attorney actually made such assurances, and that he relied on them, seems fanciful, given that both the Plea Agreement and the Court itself at the plea hearing warned Soto that it was the Court, and no one else, that would decide what sentence would be imposed, and that the Court could impose up to the statutory maximum of ten years imprisonment. Indeed, it defies logic that, in the face of such warnings, the defendant would not have advised the Court of his attorney's alleged assurances to the contrary at the plea hearing, particularly when the Court asked the following questions:

> THE COURT: Okay. Now, are those the terms of the plea agreement as you understood them at the time that you signed it?
>
> THE DEFENDANT: Yes.

> THE COURT: Has anybody made any other promises or assurances to you in connection with this plea agreement?
>
> THE DEFENDANT: No.

Exhibit B, p. 10 (emphasis added).

In any event, even if his counsel did make the prediction Soto claims he did, such conduct does not fall outside an objective standard of reasonableness. Soto claims that his attorney erred in his sentencing prediction because he "failed to take into account the application of prior offenses to the Guidelines." Defendant's Motion, p. 6. Yet there was nothing more to take into account; Soto's criminal history category was the lowest possible category -- Category I. PSR ¶ 34. He also claims that his attorney "failed to inform [him] of the strong possibility that he would be enhanced as a felon in possession of a firearm." Defendant's Motion, p. 6. This accusation also founders -- there exists no such enhancement. With respect to Soto's more general complaint that his counsel's prediction was simply wrong, that this was so does not render his performance constitutionally ineffective. The guidelines hardly present the straightest of paths. Counsel's argument that the aggravated assault guideline rather than the attempted murder guideline should apply was not patently unreasonable, and had he prevailed

in this argument, his alleged prediction would have been right on the money, had Soto not taken the witness stand and perjured himself. Without that perjury, there would have been no two level enhancement for obstruction and Soto would have received a three point reduction for acceptance of responsibility, for a net gain of five levels. Under this scenario, Soto's offense level would have been 16 and his resulting guideline range would have been 21 - 27 months. Even with the Court's additional enhancements applied in its alternative sentencing analysis -- reckless endangerment (two levels) and bodily injury (three levels) -- had Soto not taken the stand, his offense level would have been 21 and his guideline range 37 - 46 months, still well within his counsel's alleged prediction.

Nor can Soto satisfy the second part of the Strickland test -- he simply cannot establish that his attorney's erroneous prognostication, even assuming it occurred, prejudiced him. "[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where [] an adequate plea hearing was conducted." United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007). "[D]efense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and the in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the

sentencing court's discretion." Id. Accord, United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999)("[A] defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences" and therefore "a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence")(citing Roberson v. United States, 901 F.2d 1475, 1478 (8th Cir. 1990)). Here, both the plea agreement itself and the Court during the plea colloquy made plain the Court's sole discretion in fashioning the defendant's sentence and the fact that Soto could face the maximum penalty of ten years imprisonment. This renders any error made by Soto's counsel with respect to predicted length of sentence irrelevant.

Furthermore, Soto cannot demonstrate that the outcome of the district court proceedings would have been different had he received an accurate assessment of the sentence he would ultimately receive. Obviously, had Soto persisted in his plea of guilty with a correct prognostication by his attorney, the sentence imposed by this Court would have been the same. Accordingly, it is left for Soto to show "a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." Colon-Torres, 382 F.3d at 86. He can make no such showing. The Pre-Sentence Report issued on July 21, 2005. To the extent that Soto was under any illusions, that document disabused him of them, setting forth a guideline range of 121-151 months, with a restricted range of the statutory maximum of 120 months. Sentencing did not occur until September 16, 2005, nearly two months later. Yet at no time did Soto attempt to withdraw his plea of guilty. Even now, he makes no claim in his § 2255 petition that he ever wanted to withdraw his plea. And his § 2255 petition itself is proof in the pudding -- the relief he seeks is not a trial, but rather dismissal of the indictment or resentencing. Defendant's Motion, p. 15. Accordingly, the result before this Court would have been the same with or without Soto's counsel's sentencing prediction. It is plain that Soto would have persisted in his plea of guilty, and ultimately received the sentence imposed by this Court.

Even assuming, arguendo, that Soto could show that had he received an accurate prediction from his attorney, he would have attempted to withdraw his plea and insisted on a trial, he still cannot show prejudice. That is because a trial, like a plea, would have resulted in a conviction, and precisely the same maximum sentence. It must be remembered that the issue at trial

would have been the narrow one of whether Soto knowingly possessed the Glock pistol -- a pistol that he fired multiple times in the presence of police officers and other witnesses and then hid under the seat of his car, where it was recovered. There can be no doubt about what the verdict, and ultimately the post-trial sentence, would have been. The fact that the ultimate outcome of the district court proceedings would have been the same whether he went to trial or not also dooms his prejudice claim. See Clingman, 288 F.3d at 1886-87 (rejecting ineffective assistance claim because court did not believe that if defendant had withdrawn plea and gone to trial, "defendant could have prevailed on a motion to dismiss on speedy trial grounds or obtained an acquittal based on the alleged confidential informant defense.")(emphasis added).

**B. Soto Could Have Benefitted From The Plea Agreement**

Soto styles his second claim of ineffective assistance of counsel as follows: "Trial Attorney Entered Into A Plea Agreement That Permits The Government To Recommend A Sentence In Excess Of the Statutory Maximum And Received Nothing In Return." Defendant's Motion, p. 8. Neither assertion is true.

First, the plea agreement did not allow the government to recommend a sentence in excess of the statutory maximum.

Rather, the plea agreement made plain that the maximum was ten years in prison and that the district court was bound by that maximum. Exhibit A, ¶¶ 5, 11. That is what the government ultimately recommended at sentencing. Exhibit C, p. 79.

Second, Soto's complaint that he received "nothing" in return for pleading guilty is flawed because it is entirely retrospective; it is based on how the sentencing turned out rather than on an assessment of the factors that he and his counsel pondered ex ante. The First Circuit has warned that "[u]nder the first prong of Strickland, there is a strong presumption that counsel's strategy and tactics fall within the range of reasonable professional assistance," and that "courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotation marks and citations omitted).

A prospective analysis yields a very different result. The record suggests that before Soto pled guilty he thought (with some justification) that he might be able to persuade this Court that only the aggravated assault guideline applied and that a five-level enhancement was warranted, yielding a offense level of 19 and a sentencing range of 30-37 months. Exhibit C, p. 62. If Soto had achieved this result, the government's plea agreement commitment to recommend a three-level reduction for

acceptance of responsibility (Exhibit A, ¶¶ 2(b) and (c)) might well have been of great value, causing the offense level to drop from 19 to 16 and the guideline range to drop from 30-37 months to 21-27 months. See USSG § 5A.[1] Even with the other enhancements that this Court added during its alternative sentencing analysis (three levels for bodily injury and two for reckless endangerment, Exhibit C, p. 75), the government's recommendation might have caused the range to drop from 51-63 months to 37-46 months. Id. Furthermore, even if Soto had been stuck with the attempted murder guideline without any enhancements, yielding a range of 135-168 months, the government's recommendation for acceptance of responsibility might have caused that range to drop to 97-121 months. Id.

The problem for Soto is that as we now know with the benefit of hindsight, not only did he fail to persuade the Court that it should apply the aggravated assault guideline instead of the attempted murder guideline, but he committed perjury in the process, thus forfeiting an acceptance of responsibility reduction and triggering yet another enhancement. With the present knowledge that all these guideline issues went against him and that the Court decided to impose the statutory maximum

[1] Indeed, absent a government recommendation Soto could not have qualified for the third point. See USSG § 3E1.1(b); United States v. Espinoza-Cano, 456 F.3d 1126, 1134-35 (9th Cir. 2006).

regardless of which guideline applied, it may look like the government's commitment to recommend a three-level reduction was meaningless. But ex ante that promise was very far from meaningless, especially in a case where Soto stood no chance of avoiding conviction at trial absent an irrational jury. Given the long odds at trial, even a modest and contingent sentencing concession by the government was sufficient to make Soto's decision to plead guilty a sound one. Indeed, Soto might well have made a rational decision to plead guilty in the absence of any agreement at all, in the hope that by pleading guilty and accepting full responsibility for all his offense conduct the Court would exercise its post-Booker sentencing discretion in his favor and deviate below the guideline range.

Indeed, as the First Circuit itself recognized in rejecting the defendant's appeal:

> the plea agreement makes it plain that appellant's central contention -- that the agreement "did absolutely nothing for [him]" and "was in essence a sham" -- is false. The plea agreement obligated the government to "recommend a term of imprisonment within the applicable guideline range," "recommend a two-level reduction in the offense level for acceptance of responsibility," and "recommend a three-level reduction if his offense level is 16 or greater," in exchange for appellant's guilty plea, promise not to request a downward departure, and appeal waiver. At the time of the agreement's formation, there existed numerous plausible scenarios in which the government's promises

> might inure to appellant's benefit. For example, had appellant chosen not to take the stand, the court would not have found him perjurious and might have heeded the government's recommendation of a two-level reduction for acceptance of responsibility.

Exhibit D, p. 2 (emphasis added).

Soto claims that "even a first year law student" would not have entered into the plea agreement his counsel negotiated with the government. Perhaps not, but an experienced, competent attorney would have. What no attorney, experienced or not, could have known was that Soto would take the stand at the sentencing hearing, commit perjury, and put himself in the sentencing jackpot. Even a child knows that there are consequences for that conduct. At bottom, responsibility for Soto's lengthy sentence lies with Soto, and with him alone. His second ineffective assistance of counsel claim should also be rejected.

**II. SOTO IS NOT ENTITLED TO AN EVIDENTIARY HEARING ON HIS INEFFECTIVE ASSISTANCE CLAIMS**

Evidentiary hearings on Section 2255 motions, like such hearings on other motions, "are the exception, not the rule." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). "A party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment." Id. The First Circuit has held that an evidentiary hearing is

unnecessary where the Section 2255 motion: 1) is inadequate on its face, or 2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. Id., at 225-26; Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). Indeed, a Section 2255 petition "is subject to dismissal, without an evidentiary hearing, if the grounds for relief . . . amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact." Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992)(citing Moran, 494 F.2d at 1222). The burden is on the petitioner to prove that he is entitled to a hearing, by a preponderance of the evidence. Id.; Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989). Where, as here, a Section 2255 petition "is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

Given this standard, it cannot be seriously argued that Soto is entitled to an evidentiary hearing. As discussed in Part I above, Soto's ineffective assistance claims are facially invalid. His attack on the plea agreement badly misses the mark -- it was his perjurious testimony, not a lopsided plea

agreement that led to his lengthy sentence. This Court conducted all of the proceedings below. An evidentiary hearing is simply not necessary.

**CONCLUSION**

For the foregoing reasons, Soto's Section 2255 petition should be denied and dismissed.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Peter F. Neronha

PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza - 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov

Dated: January 18, 2008

Certificate of Service

I hereby certify that on the 18th day of January, 2008, a copy of the within Government's Response To Petitioner's "Motion To Vacate, Set Aside Or Correct Sentence Under Section 2255" and Exhibits were mailed by first class mail to Raul Soto, Reg. No. 05588-070, USP-Canaan, P.O. Box 300, Waymart, PA, 18472

/s/ Peter F. Neronha

PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza - 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov